

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

UNITED STATES OF AMERICA

v. Criminal No. 3:21cr51

OMAR ALFONSO ALAS,

Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on MR. ALAS'S MOTION TO DISMISS THE INDICTMENT BECAUSE IT VIOLATES THE STATUTE OF LIMITATIONS (ECF NO. 16) (the "Motion").

Alas has been indicted on a charge of illegal reentry under 8 U.S.C. § 1326(a). The Motion argues that the indictment is barred by the five-year statute of limitations. This argument depends on whether federal immigration authorities first had notice that Alas had illegally reentered the country within the five-year period before the indictment. Alas argues that federal immigration authorities did have such notice based on an admission that Alas made to a Harris County Sheriff's Deputy (named Landaverde) in 2016 at a time when the Harris County Sheriff's Office (HCSO) was a party to an agreement with the United States Department of Homeland Security under § 287(g) of the Immigration and Nationality Act, codified as 8 U.S.C. § 1357(g) (hereafter "§ 287(g)"). Under the § 287(g) agreement, some Deputies of the HCSO were cross-designated as ICE agents. Alas argues that his

admission of his illegal status to Deputy Landaverde was thus adequate to satisfy the "found in" requirement under § 1326(a)(2). Because that admission was made five years and eight days before the filing of the criminal complaint, it follows, Alas argues, that the indictment is barred by the statute of limitations.

In 2016, HCSO was a party to a Memorandum Agreement with ICE by which "ICE delegates nominated, trained, certified, and authorized Harris County Sheriff's Office (HCSO) personnel to perform certain [specified] immigration enforcement functions . . . ." (Defendant's Ex. A, p. 1 (actual 3d page)). The stated intent of the Memorandum Agreement was to "enable the HSCO [under ICE supervision] to identify and process immigration violations . . . ." Id.

The Memorandum Agreement was in effect from December 1, 2013 through June 30, 2016. Id. As contemplated by the Memorandum Agreement, HCSO designated some of its personnel as persons who could process immigration violations. Over the course of the Memorandum Agreement, twenty people were so cross-designated. Government Ex. 2 at 2. Deputy Landaverde was not one of those individuals. Id.; STIPULATIONS (ECF No. 41 at ¶¶ 1-2). In light of the STIPULATIONS and Fourth Circuit law, the Court finds that the record does not show that Alas was "found in" the United States when he made his admission to Deputy Landaverde in 2016. The Motion to dismiss the indictment will therefore be denied.

**BACKGROUND**

Alas first illegally entered the United States around 2004. In 2007, he was convicted in Virginia on a plea of guilty to a charge of malicious wounding. (Government Ex. 1 at 57-58). After serving his sentence, Alas was deported in 2011 pursuant to an administrative removal order that he had signed. Some time before April 2016, Alas illegally entered the United States a second time.

In April 2016, Alas was working in Houston, Texas. On the night of April 3, 2016, he was involved in a dispute with his supervisor, which resulted in Alas's being beaten and then hospitalized. While in the hospital for treatment, Alas was interviewed by Deputy Landaverde. During that interview, Alas told Landaverde that he had been beaten by his supervisor before, but that he felt unable to report the problem to law enforcement because he was in the country illegally. Landaverde assured Alas that his status as an illegal immigrant would not be reported.

In 2020, Alas was arrested in Virginia on charges of assault and battery. A background search revealed that Alas had previously been deported, and ICE placed a detainer on his file. An arrest warrant was issued for Alas on April 12, 2021 after he had been released from state custody. Alas was arrested and is charged with violating 8 U.S.C. § 1326(a).

**DISCUSSION**

Alas argues that the indictment must be dismissed because of the five-year statute of limitations under 18 U.S.C. § 3282, which both parties agree governs § 1326(a) offenses. Alas's argument relies on the premise that, when, in April 2016, he told Deputy Landaverde that he was in the country illegally, he was "found" within the meaning of 8 U.S.C. § 1326(a)(2).[1] Alas grounds this premise on the notion that the HCSO was, at the time, participating in the § 287(g) program with ICE, under which some HCSO Deputies had been cross-designated as ICE agents.[2] Alas reaches this conclusion with an argument in the alternative: either Deputy

---

[1] The text of 8 U.S.C. § 1326 states:

(a) In General
Subject to subsection (b), any alien who--
(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
shall be fined under title 18, or imprisoned not more than 2 years, or both.

[2] According to one news article submitted by the government, the contents of which Alas did not dispute, the program involved no street-level enforcement component. HSCO: Sheriff Ron Hickman Renews 287(g) Partnership with US Immigration and Customs Enforcement, NIXL (June 23, 2016, 4:03 PM), https://local.nixle.com/alert/5667732/?sub_id=1000000036.

Landaverde himself was cross-designated, such that his knowledge of Alas's status directly satisfied the "found in" requirement; or else Deputy Landaverde's knowledge can be imputed to federal immigration authorities under a constructive knowledge theory. Either way, Alas argues, the five-year limitations period commenced on April 4, 2016, which was five years and eight days before the criminal complaint was filed on April 12, 2021.

**1. The Actual Knowledge Theory is Contradicted by the Stipulated Findings**

At a hearing on the Motion, the parties presented STIPULATIONS (ECF No. 41) that included additional information about the HCSO's participation in the § 287(g) program. In light of the stipulated facts, the claim that the Deputy's direct knowledge of Alas's illegal status satisfied the "found in" requirement is untenable.

According to an affidavit submitted by an ICE employee with access to "databases that list all those who have been trained and certified under § 287(g)," a total of 20 Harris County officers were ever trained in the Emigration and Removal Operations Academy at which § 287(g) cross-designated officers must be trained. Ex. 2 at 1-2; ECF no. 41 at 1. None of the five relevant HCSO officers in this case, including Deputy Landaverde, were among the deputies who had been cross-designated. Id. On these undisputed facts, there is no basis for finding that Deputy Landaverde's knowledge that Alas was in the country illegally constituted Alas's being

"found in" the United States by a federally cross-designated immigration officer.

**2. The Fourth Circuit Has Rejected the Constructive Knowledge Theory**

Alas next asks the Court to treat him as having been "found" by ICE in 2016 under a constructive knowledge theory. The question whether constructive knowledge satisfies § 1326(a)(2) was addressed by the Fourth Circuit in United States v. Uribe-Rios, 558 F.3d 347 (4th Cir. 2009). In Uribe-Rios, the defendant had been encountered by ICE outside the five-year period set by the statute of limitations but had used an alias during his past encounter. The defendant nevertheless argued that the government had the information necessary to piece together his real identity and illegal status before the commencement of the five-year period and thus should have known of his illegal status; i.e., the government had constructive knowledge. The Fourth Circuit rejected this argument for several reasons, the first of which was that "the plain text of section 1326 does not support a theory of constructive knowledge." 558 F.3d at 354. The Court then approvingly cited a Seventh Circuit case, holding that "when the government should have discovered a deportee's illegal presence in the United States is irrelevant to when the statute of limitations begins to run." United States v. Gordon, 513 F.3d 659, 664-65 (7th Cir. 2008) (internal citation omitted).

Alas argues that, because the Fourth Circuit went on to state that Uribe-Rios's argument was unsuccessful even on a constructive theory of knowledge, it follows that the court did not actually hold that a constructive theory of knowledge does not apply to § 1326(a)(2). Alas finds some support for this argument in United States v. De Leon-Ramirez, 925 F.3d 177 (4th Cir. 2019). There, the Fourth Circuit said, "We have yet to decide precisely when the limitations period begins to run on this offense," id. at 182, citing Uribe-Rios. While Alas is correct that the Fourth Circuit's language in De Leon-Ramirez is non-committal as to the substance of Uribe-Rios's holding, it is also true that De Leon-Ramirez in no way disturbs Uribe-Rios's first stated reason (the plain text of the statute) for rejecting the constructive knowledge theory advanced there. Indeed, given the words used by the Fourth Circuit in deciding Uribe-Rios, "[T]he plain text of section 1326 does not support a theory of constructive knowledge," 558 F.3d at 354, the effort by Alas to treat its holding as "dicta" lacks merit. This is especially true considering that the Fourth Circuit cited with approval the text of the Seven Circuit's reasoning in Gordon: "when the government should have discovered a deportee's illegal presence in the United States is irrelevant to when the statute of limitations began to run." Uribe-Rios, 558 F.3d at 354 (quoting Gordon, 513 F.3d at 664-65. Alas then argues that a majority of circuits surveyed in an unpublished Fourth Circuit opinion have

"held or strongly intimated" that they would accept a constructive knowledge theory, United States v. Vargas, 408 Fed. App'x 676, 679 (4th Cir. 2011) (unpublished), and from that premise he argues that the court should reject the Fourth Circuit's clearest statement on this question in Uribe-Rios. The Court declines the invitation to depart from the rather clear pronouncement of the Fourth Circuit.

In any event, much like the cases that Alas cites, this case does not turn on accepting or rejecting a constructive knowledge theory of § 1326(a)(2). Even if "found in" is read to mean "should have been found in," Alas fails to offer a cogent argument for why the facts presented are enough to satisfy a constructive knowledge requirement.

**3. Even on a Constructive Knowledge Theory, Alas Was Not "Found in" the United States in 2016**

The events in the record do not support a finding of the federal government's constructive knowledge of Alas's illegal presence in the United States. Alas's briefing, in fact, offers no explanation at all for how Deputy Landaverde's knowledge of Alas's illegal presence in the United States would satisfy the requirements of constructive knowledge.

The constructive knowledge standard would hold that "the statutory period begins to run when immigration authorities know of defendant's physical presence and 'either know of or, with the

exercise of diligence typical of law enforcement authorities, could have discovered the illegality of the defendant's presence.'" Vargas, 408 Fed. App'x. at 676 (quoting United States v. Palomino Garcia, 606 F.3d 1317, 1323 (11th Cir. 2010)). But the Court discerns no evidence to support the conclusion that reasonably diligent federal immigration officials would have uncovered Alas's presence and illegal status as a result of the statement that he made to Deputy Landeverde.

That statement was made to a state official, and not to a federal official. And that state official was not cross-designated as an ICE agent under § 287(g). Alas offers no reason to think that reasonable diligence on the part of the few cross-designated employees at the HCSO would have uncovered this small detail in Deputy Landeverde's report about his interview with a crime victim.

As the government points out in its response, the Fourth Circuit rejected a very similar imputation of constructive knowledge in Uribe-Rios, stating that "courts have uniformly declined to find that state officials' knowledge of an alien's illegal presence in the United States may be imputed to federal immigration authorities to trigger the limitations period." 558 F.3d at 353. Because the STIPULATIONS (ECF No. 41) make clear that none of the HCSO deputies involved in Alas's case were cross-designated under the § 287(g) agreement, they are all straightforwardly "state officials." It follows that, even if

this court were not inclined to treat Uribe-Rios's language about constructive knowledge as controlling, the constructive knowledge theory that Alas urges just does not help his case.[3] Thus, wholly apart from whether § 1326(a)(2) ought to be read as being satisfied by an official's constructive knowledge, Alas has not shown that, under that theory, the statute of limitations was triggered by his 2016 conversation with Deputy Landeverde.

**CONCLUSION**

For the reasons set forth above, MR. ALAS'S MOTION TO DISMISS THE INDICTMENT BECAUSE IT VIOLATES THE STATUTE OF LIMITATIONS (ECF NO. 16) will be denied.

It is so ORDERED.

/s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 26, 2021

[3] Because Alas has offered neither evidence nor argument for how, on a constructive knowledge theory, any federal immigration official could with reasonable diligence have learned about his admission to Deputy Landeverde, it is not necessary to reach the question of what sort of knowledge is required to satisfy the "found in" requirement, and whether the mere fact that Alas was not in the country legally was adequate.